UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL W. O'DELL,

    Plaintiff,

v.                                                                           Case No: 8:17-cv-733-T-27JSS

UNITED STATES OF AMERICA,

    Defendant.
_____/

## ORDER

**BEFORE THE COURT** are Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (Dkt. 34), Plaintiff's opposition (Dkt. 39), Defendant's reply (Dkt. 44), and Plaintiff's surreply (Dkt. 47). Upon consideration, Defendant's Motion for Summary Judgment (Dkt. 34) is **DENIED**.

### I.    BACKGROUND

Plaintiff, a veteran, brings this action against the United States under the Federal Tort Claims Act ("FTCA") and 28 U.S.C. § 1346(b)(1) alleging negligence and professional malpractice. (Dkt. 16, Amended Complaint). Plaintiff's allegations stem from medical care he received from the Department of Veterans Affairs at the Tampa Veterans Affairs Medical Center. (Id.).

The undisputed facts are as follows. On June 26, 2014, Plaintiff underwent a total right knee replacement. (Dkt. 34-1, Ex. 1). Dr. Jesus Martinez performed the procedure at the Tampa Veterans Affairs Medical Center. (Id.). Between the date of surgery and July 30, 2014, Plaintiff received inpatient and outpatient care, and had several sessions of physical therapy. (Dkt. 34-1, Ex. 2-9). On

1

July 30, 2014, Plaintiff had his first post-operative follow-up appointment with Dr. Martinez. (Dkt. 34-1, Ex. 10). At this appointment, Plaintiff complained of persistent pain and lack of progress at physical therapy. (Id.). Dr. Martinez was concerned Plaintiff was developing Reflex Sympathetic Dystrophy. (Id.). To treat Plaintiff's complications, Dr. Martinez scheduled a manipulation under anesthesia ("MUA") to address the limited range of motion and pain that Plaintiff was experiencing. (Id.). On August 11, 2014, Dr. Martinez performed the MUA, which included a steroid injection into the knee. (Dkt. 34-1, Ex. 12). Approximately one-week later, a second MUA was performed without complication. (Dkt. 34-1, Ex. 19). However, on September 18, 2014, Plaintiff returned to the VA's Emergency Room with increased pain, swelling and redness. (Dkt. 34-1, Ex. 33). Dr. Martinez aspirated Plaintiff's knee, but found no fluid in the joint. (Id.). A bone scan was ordered, and an antibiotic regimen was put in place until infection was ruled out. (Id.).

Prior to this VA Emergency Room visit, Plaintiff requested approval from the VA to receive a second opinion about his knee from an outside doctor. (Dkt. 34-1, Ex. 37). This request was granted and Plaintiff sought the care of Dr. Charles Nofsinger. (Dkt. 34-1, Ex. 37, 38). On September 26, 2014, upon seeing Plaintiff at his initial appointment, it was obvious to Dr. Nofsinger that Plaintiff had an infection in his knee. (Dkt. 34-1, Ex. 38); (Dkt. 39-3, Affidavit of Dr. Charles Nofsinger, ¶¶ 9, 10). According to him, it was the worst infection he had ever treated. (Dkt. 34-5, Deposition of Dr. Charles Nofsinger at 152:4-12). He ordered Plaintiff's knee be aspirated, which resulted in the identification of a MRSA infection. (Dkt. 34-1, Ex. 40). To treat the infection, Dr. Nofsinger removed the knee prosthesis and inserted an antibiotic spacer. (Dkt. 34-1, Ex. 41). Plaintiff's infection continued, requiring Dr. Nofsinger to insert a second antibiotic spacer higher up Plaintiff's leg. (Dkt. 34-1, Ex. 42). Once the infection dissipated, Dr. Nofsinger performed a total knee revision. (Dkt. 34-1, Ex. 43).

In Plaintiff's amended complaint, he alleges that "Defendant United States of America,

including its directors, officers, operators, administrators, employees, agents, and staff at the Tampa VA Medical Center" (Tampa VA Medical Center) breached its duty of care to Mr. O'Dell." (Dkt. 16, ¶¶ 8, 53). Specifically, he alleges that "Defendant had a duty to provide ordinary care, and to exercise that standard and degree of care and skill required of health care providers, consistent with the expertise that the Defendant presented to the community at large" and that "Defendant breached its duty to Mr. O'Dell for failing to properly monitor him post-operatively and treat known complications to his surgery." (Id. at ¶¶ 52, 55). According to Plaintiff, as a proximate result of Defendant's actions, he sustained serious and permanent physical injuries and mental anguish. (Id. at ¶ 56).

Defendant moves for summary judgment, contending that Plaintiff's evidence fails "to establish the essential elements of medical malpractice." (Dkt. 34, p. 12). Defendant's contentions are unpersuasive.[1]

## II. STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A genuine factual dispute exists only if a reasonable fact-finder 'could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict.'" *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is material if it may affect the outcome of the suit under governing law. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). All facts are viewed and all reasonable inferences are drawn in the light most favorable to the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

---

[1] In support of its motion, Defendant submits the expert report of Dr. Kerry Cleveland. As an initial matter, Dr. Cleveland's report is unsworn. In this Circuit, unsworn statements do not meet the requirements of Rule 56 and therefore should not be considered by a district court in ruling on a motion for summary judgment. *Carr v. Tatangelo*, 338 F.2d 1259, 1273 n.26 (11th Cir. 2003). Only "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits" could be considered by a district court in reviewing a summary judgment motion. *Id.*

3

The moving party bears the initial burden of showing that there are no genuine disputes of material fact. *Hickson Corp. v. Northern Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the moving party demonstrates the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories, and admissions on file to designate facts showing a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324. The Court will not weigh the evidence or make findings of fact. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party. *See id.*

## III. DISCUSSION

"Under the FTCA, the United States is liable for tortious conduct 'in the same manner and to the same extent as a private individual under like circumstances' after applying the applicable law in the same jurisdiction." *Turner ex rel. Turner v. United States*, 514 F.3d 1194, 1203 (11th Cir. 2008) (quoting 28 U.S.C. § 2674).

Plaintiff's medical malpractice claim arose in Florida.[2] And to succeed on his Florida medical malpractice claim, "a plaintiff must establish the following: the standard of care owed by the defendant, the defendant's breach of the standard of care, and that said breach proximately caused the damages claims." *Gooding v. Univ. Hosp. Bldg., Inc.*, 445 So. 2d 1015, 1018 (Fla. 1984). Defendant takes issue with two elements of Plaintiff's claim: (1) "Plaintiff cannot identify a breach in the standard of care that caused harm," and (2) "even if Plaintiff can demonstrate a breach, Plaintiff cannot prove causation." (Dkt. 34, p. 2).

---

[2] "A medical-malpractice claim is defined as a claim 'arising out of the rendering of, or the failure to render, medical care or services.'" *Cagle v. United States*, 738 F. App'x 633, 637 (11th Cir. 2018) (quoting FLA. STAT. § 766.106(1)(a)).

4

*Standard of Care*

Under Florida law, "[t]he prevailing professional standard of care for a given health care provider shall be that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers." FLA. STAT. § 766.102(1). Generally, "[i]n medical malpractice cases, the standard of care is determined by a consideration of expert testimony." *See Pate v. Threlkel*, 661 So. 2d 278, 281 (Fla. 1995); *Bush v. United States*, 703 F.2d 491, 495-96 (11th Cir. 1983) (A determination regarding standard of care "usually necessitates expert testimony by those physicians who perform similar services in the community."). And because Defendant's method of treatment is challenged, Plaintiff is required to provide expert testimony because "neither the court nor the jury can or should be permitted to decide, arbitrarily, what is or is not a proper diagnosis or an acceptable method of treatment," *Cagle*, 738 F. App'x at 638 (quoting *Sims v. Helms*, 345 So. 2d 721, 723 (Fla. 1977)).

Defendant argues that "Plaintiff presents no evidence that Dr. Martinez breached the standard of care at the July 30, 2014 follow-up appointment."[3] (Dkt. 34, p. 16). In support of this contention, Defendant argues that Dr. Nofsinger's testimony regarding standard of care contradicts his own opinion that Dr. Martinez should have aspirated Plaintiff's knee at the five-week follow-up appointment because he testified that "if Plaintiff no longer had chills, shaking, or fever at the time of the follow up appointment, then the standard of care would not require Dr. Martinez to aspirate the knee." (Id.). Defendant also argues that because there is no evidence of chills after July 3, 2014, Dr. Martinez would have had no basis to discover any infection, no basis to aspirate the knee, and therefore did not breach the standard of care. (Dkt. 34, pp. 15-16).

---

[3] Plaintiff's first post-operative follow-up appointment with Dr. Martinez occurred on July 30, 2014.

5

However, and as Plaintiff addresses in his response and surreply, his claim is not isolated to what occurred on July 30, 2014.[4] Notwithstanding, in opposition to summary judgment and in an effort to show that a genuine issue of material fact exists, *Dietz*, 598 F.3d at 815, Plaintiff goes beyond the pleadings and submits the affidavit of Dr. Charles Nofsinger, his treating physician and expert. In his affidavit, Dr. Nofsinger opines as to the standard of care that was required (Dkt. 39-3, Nofsinger Aff., ¶ 11, 14) and how and when the standard of care was breached (Id. at ¶¶ 13, 14). Dr. Nofsinger avers:

> 11. . . . On 7-2-14 the records list infection as a possible source of problem but it was never ruled out beyond an indication that basic labs do not indicate infection as cause of fever. ***At this time, the standard of care required ruling out infection.***
>
> 12. Improvement was very slow. He was on pain medication that included a fever reducer which may have been masking obvious infection signs early on following surgery.
>
> 13. ***It was a violation of the standard of care not to rule out an infectious process*** in his right knee and aggressively begin treatment.
>
> 14. . . . [Dr. Martinez] injected Mr. O'Dell's knee with steroids before ruling out an infection in the knee. ***It is never within the standard of care*** to inject a knee join (sic) with steroids before ruling out an infection if any signs of infection were present.

(Dkt. 39-3, Nofsinger Aff.) (emphasis added).

Additionally, according to Dr. Nofsinger, Dr. Martinez was still responsible to review the medical records, look at symptoms, and rule out infections or any other process that could have been occurring in Plaintiff, regardless of whether Plaintiff was under the care of another medical professional. (Dkt. 34-5, Nofsinger Dep. at 170:21-25 – 171:1-5).

---

[4] "To be crystal clear, Dr. Nofsinger's opinion is that the standard of care was violated at the time Mr. O'Dell showed just about every sign of infection . . ., and an infection was not ruled out. On July 2, 2018 (sic), when the medical records indicate a possible source of the symptoms as infection, the standard of care was breached by failing to rule out an infection," (Dkt. 39, pp. 7-8) and "To be clear, Plaintiff, along with Dr. Nofsinger, are claiming Dr. Martinez breached the standard of care when he failed to rule out an infection and then again when he later injected the infected knee with steroids." (Dkt. 47, p. 2). Indeed, when viewing the facts in a light most favorable to Plaintiff, it appears on the face of the Complaint that Plaintiff alleges Dr. Martinez violated the standard of care by not ruling out an infection earlier, rather than simply violating the standard of care on one particular date. See (Dkt. 16, Amended Complaint).

Upon a review of the record, Plaintiff has demonstrated that a material dispute of fact exists on at least two issues: (1) whether Dr. Martinez acted within the applicable standard of care in assessing and treating Plaintiff's total right knee replacement, and (2) when the standard of care was breached. To be entitled to summary judgment, Defendant "must conclusively show the absence of any genuine issue of material fact." *Holl v. Talcott*, 191 So. 2d 40 (Fla. 1966). Defendant has failed to do so, and therefore, is not entitled to summary judgment.

## *Causation*

Defendant next contends that "Plaintiff cannot prove that the steroid injection during the MUA more likely than not made the infection worse because the Plaintiff's actual symptoms did not match Dr. Nofsinger's predictions." (Dkt. 34, p. 16). Having reviewed the evidence presented by both parties[5], Plaintiff has successfully rebutted Defendant's contention regardless of whether the symptoms exhibited by Plaintiff did not match what Dr. Nofsinger would have predicted if an infected knee was injected with steroids.

To establish proximate cause, a plaintiff must prove that the defendant's negligence more likely than not caused the plaintiff's injury. *Gooding*, 445 So. 2d at 1018. And similar to the standard of care argument above, the affidavit and testimony of Plaintiff's expert demonstrates that a material dispute of fact exists as to whether the steroid injection made Plaintiff's infection worse. In the affidavit, Dr. Nofsinger avers,

> 16. Failing to detect and treat the infection, as well [sic] making it worse by injecting it with steroids, made the overall result much worse for the patient.
>
> 17. . . . Mr. O'Dell had a very poor outcome for a total knee replacement for a relatively young patient. ***The cause is attributable to the delay in recognizing the***

---

[5] Defendant includes excerpted portions from Dr. Kerry Cleveland's expert report in its argument regarding causation. As stated previously, unsworn statements are not to be considered when deciding summary judgment.

7

*infection and making it worse by injecting the infected joint with steroids.*

(Dkt. 39-3, ¶¶ 16, 17) (emphasis added). Additionally, Dr. Nofsinger was asked and answered the following:

> Q  Do you have an opinion as to - - I mean, so is your opinion that [the infection] got worse following the injection?
> A  Yes, after the, so just so we're clear, the manipulation and injection?
> Q  Yes
> A  Yes, that would be my opinion.

(Dkt. 34-5, Nofsinger Dep. 157:1-6). And Dr. Nofsinger reiterated:

> Q  . . . it's your view that the infection worsened at the time the MUA, because the MUA and the steroid injection.
> A  Mostly from the steroid injection, but then the MUA I think also exacerbated it.

(Dkt. 34-6, Dr. Nofsinger Dep. 60:12-18). This evidence demonstrates a genuine dispute of material fact as to proximate cause, and therefore, Defendant is not entitled to summary judgment.

## IV. CONCLUSION

Defendant has failed to carry its burden to demonstrate the absence of any genuine issues of material fact. The affidavit submitted by Plaintiff, as well as Dr. Nofsinger's deposition testimony, establish that material issues of fact are disputed amongst the parties. *See Celotex Corp.*, 477 U.S. at 324. Accordingly, Defendant's Motion for Summary Judgment (Dkt. 34) is **DENIED**.

**DONE AND ORDERED** this 31st day of January, 2019.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record

8